UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ARCTIC ICE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | Case No. 4:24-CV-1362-ACL |
| ACADIA INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This action arises from a first-party insurance claim alleging hail and storm damage made by Arctic Ice under a commercial insurance policy issued by Acadia Insurance Company ("Acadia"). The matter is before the Court on Defendant Acadia's Motion for Partial Summary Judgment. (Doc. 40.) Also pending is Acadia's Motion for Leave to File Amended Answer and Counterclaim. (Doc. 43.)

## I. Background[1]

Acadia issued a Commercial Insurance Policy to Arctic Ice, Policy Number CPA 3182984-24, with effective dates of March 31, 2021, to March 31, 2022 ("Policy"). The Policy was issued on the property owned and operated by Arctic Ice and located at 1498 Kin-Ark Ct., in St. Louis, Missouri ("Subject Property"). The original inception date of the Policy was October 30, 2017.

[1] The Court's recitation of the facts is taken from facts that (1) Plaintiff admitted were undisputed in its Response; and (2) Plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

The Policy contains the following pertinent provisions:

> 3. Duties In The Event Of Loss Or Damage
> a. You must see that the following are done in the event of loss or damage to Covered Property:
> ***
> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.
> ***
> H. POLICY PERIOD, COVERAGE TERRITORY
> Under this Coverage Part:
> 1. We cover loss or damage commencing:
> a. During the policy period shown in the Declarations; and
> b. Within the coverage territory.
> 2. The coverage territory is:
> a. The United States of America (including its territories and possessions).
> b. Puerto Rico; and
> c. Canada.

(Doc. 42-1 at 96-97, 112.)

On February 24, 2023, Arctic Ice, via William Cox from Public Adjuster Insurance Adjusters Group, LLC, submitted a claim for damages to the Subject Property allegedly caused on July 9, 2021. Acadia, via Continental Western Group, sent Arctic Ice a letter reserving its rights under the Policy on March 2, 2023. (Doc. 42-4.)

On March 14, 2023, Continental Western Group retained Senior Civil/Structural Engineer Brian Wehmeier, P.E., from SEA to perform an inspection of the Subject Property and render a professional opinion regarding the following: (1) the extent of hail damage to the buildings, and,

(2) if present, whether the hail damage occurred after October 29, 2017. On March 16, 2023, Mr. Wehmeier conducted a site inspection at the Subject Property. Mr. Wehmeier performed a second site visit on April 21, 2023. On May 17, 2023, Mr. Wehmeier issued his report containing his findings and conclusions, wherein he determined that Plaintiff's claimed damages occurred prior to October 29, 2017. Mr. Wehmeier stated that the largest hail event at the Subject Property occurred on April 28, 2012, and that the newest building on the Subject Property constructed in 2015 had not sustained any hail denting or damage while the older buildings showed denting and damage from hail.

On June 16, 2023, Acadia notified Arctic Ice that it was denying coverage for its claim.

On May 24, 2024, Plaintiff provided Acadia with a repair estimate and the engineering report of Steve Prosser, and requested that Acadia reconsider its denial of the claim. Mr. Wehmeier reviewed the repair estimate and engineering report of Mr. Prosser and concluded that they did not change his findings and opinions. On June 25, 2024, Acadia informed Arctic Ice that it was standing on its prior denial of the claim, as "the damage to the buildings took place prior to our policy inception of 10/30/2017 therefore we do not have coverage for the damages." (Doc. 42-3.)

Plaintiff represented throughout the claim investigation process and through litigation discovery that it was not aware of any insurance claims prior to this one. Arctic Ice submitted a claim to its prior insurer Liberty Mutual in 2012 for hail damage sustained to the Subject Property on April 28, 2012, which was paid by Liberty Mutual.

Plaintiff filed its Complaint in this Court on October 10, 2024, in which it asserts claims for breach of insurance contract (Count I), and vexatious refusal to pay (Count II). (Doc. 1.) In Count II, Plaintiff alleges that Defendant intentionally refused to pay without reasonable cause or excuse, as evidenced by the following actions: (a )Defendant misrepresented the facts regarding

the investigation of Plaintiff's claim and misrepresented the Policy provisions relating to Defendant's coverage and payment obligations; (b) Defendant failed to attempt in good faith to effectuate the coverage provisions of the Policy; (c) Defendant compelled Plaintiff to initiate this ligation to obtain the coverage provided and benefits due under the Policy; (d) Defendant failed and refused to attempt in any reasonable manner to undertake adequate coverage efforts even though coverage is clear, obvious, and apparent; (e) Defendant refused and failed to conduct a reasonable investigation of Plaintiff's claim based on all available information; (f) Defendant failed to adopt, implement, and enforce reasonable standards for the prompt investigation and settlement of claims arising under its insurance policies; (g) Defendant failed to promptly provide Plaintiff with a reasonable explanation for its refusal to fully pay Plaintiff's claim; (h) Defendant failed to timely and fully pay all amounts due and owing under the Policy with no reasonable or justifiable basis; (i) Defendant made untrue, false, and fabricated representations regarding the existence of damage and the coverage provided by the Policy, all while Defendant knew that these representations were untrue; (j) Defendant failed to promptly provide a reasonable and accurate explanation of its justifications and reason for not paying Plaintiff's claim; and (k) Defendant engaged in such other acts toward Plaintiff that are contrary to the duties owed to Plaintiff as established by the customs and practices in the industry, the law, and the Policy. (Doc. 1 at 6-7.)

On June 12, 2026, Defendant moved for partial summary judgment on Count II of the Complaint, arguing that the undisputed material facts prove there is a bona fide coverage dispute and Acadia has a meritorious defense. Plaintiff argues that the Motion must be denied because a reasonable jury could find that Acadia's claims handling and refusal to pay was vexatious.

Additionally, on June 18, 2026, Defendant filed a Motion for Leave to File Amended Answer and Counterclaim. (Doc. 43.) Defendant contends that it learned during discovery that

Plaintiff is knowingly seeking payment for damage that occurred in 2012 for which Plaintiff has already been paid, and that Plaintiff intentionally misrepresented a material fact—that the hail damage occurred on July 9, 2021. Defendant seeks to amend its Answer to add an affirmative defense and add a counterclaim for declaratory judgment based on Plaintiff's alleged misrepresentation of material facts. Plaintiff opposes the Motion. (Doc. 51.)

## II. Defendant's Motion for Partial Summary Judgment

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted).

### B. Discussion

Defendant argues that it is entitled to summary judgment on Plaintiff's claim for vexatious refusal to pay because the undisputed facts establish that there is a bona fide coverage dispute and Acadia has a meritorious defense. Defendant contends that it promptly acknowledged and investigated Plaintiff's claim and reasonably relied on its experts' opinions in

making its coverage decision. Defendant argues that Plaintiff has set forth no facts or evidence demonstrating Acadia's handling of the claim was vexatious or unreasonable.

Plaintiff responds that a reasonable jury could find that Acadia's claims handling and refusal to pay was vexatious. Plaintiff cites the following alleged actions of Acadia in support: Acadia blatantly ignored the weight of evidence, including its own hail report identifying 2.1 inch hail at the Property on July 9, 2021; Acadia withheld from its retained engineer the crucial second page of its weather report, which documented 2.1 inch hail at the Property on July 9, 2021; Acadia ignored Plaintiff's request for transparency; Acadia relied on a biased, faulty engineering report in bad faith; and Acadia's coverage decision ignores Plaintiff's engineering reports.

In its Reply, Acadia argues that the existence of a bona fide dispute as to coverage insulates Acadia from Plaintiff's vexatious refusal to pay claim. Acadia contends that Plaintiff admits that there is a genuine dispute as to coverage under the Policy and, as such, Acadia is entitled to summary judgment.

"Missouri law provides that an insured may recover penalties and attorney fees when an insurer denies a claim without reasonable cause or excuse." *United Fire & Cas. Co. v. Historic Pres. Trust*, 265 F.3d 722, 729 (8th Cir. 2001); *see* Mo. Rev. Stat. §§ 375.296, 375.420. "These statutes are penal in nature and narrowly construed; their purpose is to deter the insurer from vexatiously refusing to pay 'after becoming aware it has no meritorious defense' to the insured's claim." *State of Missouri ex rel. Pemiscot County, Mo. v. W. Sur. Co.*, 51 F.3d 170, 174 (8th Cir. 1995) (quoting Mo. Rev. Stat. § 375.420).

"To support a claim of vexatious refusal to pay proceeds of an insurance policy, the insured must show the insurer's refusal to pay is willful and without reasonable cause, as the

facts would appear to a reasonable and prudent person." *Mears v. Columbia Mut. Ins. Co.*, 855 S.W.2d 389, 394 (Mo. Ct. App. 1993). "When there is an open question of law or fact, the insurer may insist upon a judicial determination of those questions without being penalized." *Joachim Sav. & Loan Ass'n v. State Farm Fire & Cas. Co.*, 764 S.W.2d 648, 651 (Mo. Ct. App. 1988). "The existence of a litigable factual or legal issue, however, 'does not preclude a vexatious penalty where there is evidence the insurer's attitude was vexatious and recalcitrant.'" *JAM Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 898 (Mo. Ct. App. 2004) (quoting *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984) (en banc)).

"To prove vexatious refusal to pay, the insured is not required to present direct and specific evidence." *JAM Inc.,* 128 S.W.3d at 898 (quoting *DeWitt*, 667 S.W.2d at 710). "Instead, the jury may find that the refusal to pay was vexatious based 'upon a general survey and a consideration of the whole testimony and all the facts and circumstances in connection with the case.'" *JAM Inc*, 128 S.W.3d at 898 (quoting *DeWitt*, 667 S.W.2d at 710). "Generally, whether an insurer acted reasonably is a question of fact for the jury, and thus is improper for a court to determine in granting a summary judgment." *May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co.*, 429 S.W.3d 511, 516 (Mo. Ct. App. 2014). "However, in cases in which the underlying facts are undisputed, that question of fact becomes a question of law for the court to properly decide." *Id.* at 516-17.

Here, the parties' experts' opinions reveal a dispute exists as to whether Plaintiff sustained hail damage during the time period covered under the Policy. The relevant issue, however, is whether Plaintiff has presented sufficient evidence from which a reasonable jury may conclude that Acadia's "attitude was vexatious and recalcitrant.'" *DeWitt.*, 667 S.W.2d at 710. The undersigned finds that Plaintiff has met this threshold.

Plaintiff first argues that Acadia withheld from its retained engineer, Mr. Wehmeier, the crucial second page of a weather report obtained by its own claim representative, Jeff Maday. (Doc. 53-5.) The weather report at issue, from Athenium Analytics, notes that there were 21 hail events and hail as large as 2.1 inches at the Property. Page 2 of the three-page report indicates that on July 9, 2021—the date of loss for the instant claim—there was 2.1 inch hail at the Property and 3.4 inch hail within a 5 mile radius of the Property. (Doc. 53-2 at 2.) In his report, Mr. Wehmeier remarked that the Athenium report "was somewhat sparse on information," noting that the report indicated that 21 hail events occurred at the Property but "no further detail was provided indicating the precise date or severity of the events." (Doc. 42-6 at 54.) Mr. Wehmeier testified that the report "was unlike any hail report I had seen before" in that it lacked detailed information. (Doc. 42-5 at 7.) He testified that he disregarded the report due to its vagueness and obtained a CoreLogic and WeatherGuidance report on his own. *Id.* Mr. Wehmeier explained that, because he ordered the reports himself, "I know that they had not been altered by anybody before they had been handed to me." *Id.* at 8.

Plaintiff has attached its August 7, 2023 letter to Acadia's adjuster, authored by Mr. Cox, stating that the "alteration of the Athenium report by removing the detailed pages to hide information that supports the insured's claim is at best misguided and worst fraud." (Doc. 53-6 at 1.) Acadia responded to Mr. Cox on November 28, 2023, stating that "these reports can be printed off in a number of ways. This allows for one of the attached reports to include[] dated detail, while the other did not." (Doc. 53-7.) He stated that, in "no way is providing these reports 'misguided and worst fraud'." *Id.* Plaintiff argues that Acadia took almost four months to respond to Mr. Cox's inquiries regarding the missing page, which was an unreasonable delay; and that the response does not directly address why the page was omitted.

Acadia responds that it is immaterial that Mr. Wehmeier was not provided with the complete Athenium report, because he conducted his own weather research and considered July 9, 2021, as a potential date of the claimed damage. Acadia further argues that the physical evidence observed during Mr. Wehmeier's inspection of the Property was more crucial to his conclusions than any weather data. Acadia points to Mr. Wehmeier's deposition testimony that the newer building not having hail damage was a "more definite piece of evidence than the hail reports indicating larger hail at an earlier time." (Doc. 42-5 at 32.)

Acadia's arguments address the validity of and weight to be given Mr. Wehmeier's opinions. These issues are separate from Plaintiff's claim that Acadia intentionally omitted weather data supporting Plaintiff's claim. A genuine issue of fact remains as to whether Acadia intentionally withheld weather data that was favorable to its insured's claim from its expert. The undersigned finds that a reasonable juror could find that if that occurred, such conduct was vexatious and recalcitrant.

Plaintiff also argues that Acadia improperly guided Mr. Wehmeier to his conclusions by asking him if the damage occurred before or after October 29, 2017. Plaintiff contends that Mr. Wehmeier "conveniently" concluded that all the hail damage occurred pre-policy inception, but he failed to identify a specific date upon which the hail damage allegedly occurred. It notes that Acadia's own hail reports reveal two dates within the Policy's coverage period when the Property sustained hail of equal size to the 2012 hail event, but found no damage related to those storms. Plaintiff refers to the report of its expert, Mr. Prosser, who identified hail and/or wind damage to the roofing systems of all three buildings, including building 3 (Doc. 53-9); and Mr. Prosser's rebuttal report, in which he provided supporting evidence that the hail damage occurred after October 29, 2017 and correlated to July 9, 2021 (Doc. 53-10). Plaintiff argues that Acadia

ignored Mr. Prosser's reports. Finally, Plaintiff contends that Acadia ignored Mr. Prosser's report detailing that after the April 27, 2012 hail damage, Plaintiff made repairs to the roof of building 3. (Doc. 53-11.) This evidence, Plaintiff argues, defeats Acadia's position that the 2012 storm caused all the hail damage.

Although there is generally no vexatious refusal to pay when there is an "honest difference of opinion" about the amount the insurance company owes, *Non-Royalty Shoe Co. v. Phoenix Assur. Co., Ltd., of London, England*, 210 S.W. 37, 43 (Mo. 1918), more recent caselaw also states that the issue of vexatious refusal to pay should be submitted to the jury "[w]here there is evidence an insurer unreasonably relied on the results of its own investigation," *Pace Props., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 918 S.W.2d 883, 888 (Mo. Ct. App. 1996). This includes an insurance company relying on an expert whose opinions "may be perceived as based upon a questionable assumption and an inadequate observation." *Pace Props.*, 918 S.W.2d at 888. Here, there is a dispute about whether Acadia unreasonably relied on the results of its own investigation

Viewing the facts and all reasonable inferences in light most favorable to Plaintiff, evidence exists from which a reasonable jury may conclude that Defendant's refusal to pay for any damage resulting from the July 2021 hail event was vexatious and recalcitrant. A reasonable juror could find that Acadia intentionally withheld weather data that was favorable to its insured from its expert; delayed responding to Plaintiff's concerns regarding the withholding of data; improperly guided its expert to reach a certain conclusion; and failed to conduct an adequate investigation in light of Plaintiff's expert's report and rebuttal report. When, such "as here, there is evidence that the insurer's reliance on the results of an investigation is not reasonable, the question is for the jury." *Russell v. Farmers & Merchants Ins. Co.*, 834 S.W.2d 209, 221 (Mo.

Ct. App. 1992) (citations omitted). Thus, the Court denies Acadia's Motion for Summary Judgment on Plaintiff's vexatious refusal to pay claim.

**III. Motion for Leave to File Amended Answer and Counterclaim**

As noted above, Defendant has also moved to file an Amended Answer and Counterclaim. (Doc. 43.) Defendant contends that it learned during discovery that Plaintiff is knowingly seeking payment for damage that occurred in 2012 for which Plaintiff has already been paid, and that Plaintiff intentionally misrepresented that the hail damage occurred on July 9, 2021. Defendant seeks to amend its Answer to add an affirmative defense and to add a counterclaim for declaratory judgment based on Plaintiff's alleged misrepresentation of material facts.

Plaintiff argues that the Motion should be denied, because Defendant has failed to show good cause and has unreasonably and without justification delayed bringing its Motion. (Doc. 51.) Plaintiff states that Defendant was aware of the facts underlying its proposed amended answer and counterclaim at least as early as August 26, 2025, but did not file its Motion until June 18, 2026. Plaintiff also argues that Defendant's counterclaim would be futile.

Defendant responds that it became aware that Plaintiff *may* have submitted a prior insurance claim on the same property for hail damage around June 2025, but did not believe it had a sufficient factual basis to properly plead its counterclaim and amend its answer at that time. Defendant states that it acted with diligence to take the deposition of Plaintiff's corporate representative and to subpoena Liberty Mutual's claim file in order to investigate this claim. Defendant argues that Plaintiff's concealment of the 2012 hail loss claim significantly delayed Defendant's ability to confirm the factual basis for the proposed amended answer and counterclaim. Defendant argues that Plaintiff will not be prejudiced if the Court permits

Defendant's proposed amendments, because both parties have had the opportunity to question witnesses about the 2012 hailstorm claim and, indeed, have questioned most of the witnesses about this issue. Defendant represents that, if Plaintiff would like to conduct a further deposition of a corporate representative of Acadia on this specific issue, Acadia will produce such a corporate representative as soon as possible.

The deadline for the amendment of pleadings expired on March 14, 2025. It is well-established that a "motion for leave to amend filed outside the district court's Rule 16(b) scheduling order requires a showing of good cause." *Kmak v. American Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. Oct. 19, 2017) (quoting *Williams v. TESCO Servs., Inc.*, 719 F.3d 968, 977 (8th Cir. 2013)). "The primary measure of good cause is the movant's diligence." *Id.* (quoting *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014)). Courts generally do not consider prejudice to the nonmoving party if the party seeking leave to amend has not been diligent in meeting the case management order's deadlines. *Id.* (quoting *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012)).

The Court finds that Defendant has demonstrated good cause for the untimely amendment of its pleadings. Defendant did not become aware of the facts underlying the amendment until after the expiration of the deadline to amend the pleadings. Once it became aware of the potential counterclaim, it acted diligently to obtain the information necessary to proceed with this claim.

Further, the Court finds that allowing the amendment will not result in undue prejudice to Plaintiff. As Defendant indicates, both parties have already questioned witnesses about the 2012 hailstorm claim during depositions. The parties are already in possession of the Liberty Mutual

claim file, which details its investigation of the 2012 claim. Plaintiff has already answered interrogatories and provided deposition testimony about this issue.

Plaintiff next argues that the proposed amendments would be futile. Plaintiff argues that Defendant cannot show a fraudulent intent or intent to deceive, because Defendant's allegations are merely that Arctic Ice was "not aware" of any prior insurance claims. (Doc. 43-1 at 19.)

Denial of a motion for leave to amend on the basis of futility "means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The proposed Counterclaim seeks a declaratory judgment that Plaintiff has intentionally concealed and misrepresented material facts in presenting its claim to Acadia, and that Plaintiff is not entitled to coverage under the Policy as a result. In support, Defendant cites Plaintiff's answer to Interrogatory #16, which asked whether Plaintiff had "ever made a claim against any insurance company(ies) prior to the alleged loss at issue in this case." (Doc. 43-1 at 18-19.) Plaintiff answered, "Plaintiff is not aware of any such insurance claims prior to this one." *Id.* at 19. Defendant also cites the following deposition testimony of Plaintiff's corporate representative: that Plaintiff's answer to Interrogatory #16 was "correct"; and when asked if there had been any type of damage the company knew of on the roofs prior to July 9, 2021, "Not that I know of." *Id.*

The Court concludes that the proposed Counterclaim plausibly asserts that Plaintiff intentionally concealed or misrepresented material facts in presenting its claim to Acadia. Whether Defendant is able to prove the requisite intent is an issue for trial.

In sum, Defendant has demonstrated good cause for its request to amend the pleadings outside the deadline set forth in the CMO. The Court will therefore grant Defendant's Motion. Although Plaintiff should not require additional discovery based on the amendment, the Court will grant Plaintiff leave to conduct a further deposition of a corporate representative of Acadia on this specific issue.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 40) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Amended Answer and Counterclaim (Doc. 43) is **granted**.

s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of November, 2026.